**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RICHARD DOUGHERTY,                    :
                                      :
            Plaintiff,       :     CIVIL ACTION
                                      :
      v.                     :     NO. 08-CV-3443
                                      :
MARSHALLS OF MA, INC., and   :
TJX COMPANIES, INC.,         :
                                      :
            Defendants.      :

## MEMORANDUM AND ORDER

**Joyner, J.**                                    **April 25, 2011**

Before this Court are Plaintiff's Motion for a New Trial
(Doc. No. 80), Defendants' response in opposition thereto (Doc.
No. 83), and Plaintiff's reply in further support thereof (Doc.
No. 84).[1]  For the reasons set forth in this Memorandum, the
Court denies Plaintiff's Motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Richard Dougherty sued Defendants for personal
injuries Plaintiff allegedly sustained when a box of weights
struck him in the head as he unloaded boxes from a tractor
trailer on December 7, 2006.  Jury selection took place on
September 13, 2010, and the trial began on September 14, 2010.

---

[1] After considering the parties' written submissions, the Court
concluded that oral argument was unnecessary.  See generally Local R. Civ. P.
7.1(f).

On September 21, 2010, the jury returned a verdict finding Defendants 50% liable and Plaintiff 50% liable; the jury awarded zero damages.  On October 20, 2010, Plaintiff filed his Motion for a New Trial, asserting three grounds: (1) that the jury's award of zero damages was against the weight of the evidence; (2) that the Court erred in denying Plaintiff's motion for a new jury panel or to strike a replacement juror; and (3) that the Court erred in refusing to rule on Plaintiff's objections to deposition testimony, when such objections were not made pretrial in accordance with the Court's scheduling order.

## A.  Jury selection

In accordance with this Court's Policies and Procedures, counsel for the parties were responsible for conducting voir dire of the prospective jurors.  Over the course of one and a half hours, counsel posed questions of all prospective jurors in the courtroom.  (N.T. 10/14/10, at 4.)  After causes for challenge and the parties' peremptory challenges were exercised, the Court returned to the courtroom and asked if the jury met with counsel's approval.  (N.T. 10/13/10, at 18.)  Both counsel answered in the affirmative.  (Id.)  It immediately became clear, however, that counsel had failed to ask the prospective jurors if serving on the jury for seven to ten days–the estimated length of

the trial–would create an undue hardship.  (Id. at 19; N.T.
10/14/10, at 4.)  The Court thus posed the question to the
prospective jurors.  (N.T. 10/13/10, at 19-22.)  Several
individuals, including one of the eight individuals then sitting
in the jury box, responded that they had preplanned trips that
would interfere with the trial.  (Id. at 20-24.)  After
consulting with counsel, the Court excused the individual in the
jury box who had a preplanned vacation, and the next available
prospective juror ("the replacement juror") was moved into the
jury box.  (Id. at 25-26.)  The Court thereafter asked counsel,
"[I]s this your jury?"  (Id. at 27.)  Counsel answered in the
affirmative, and the Court dismissed the remaining panel members.
(Id. at 27-28.)

    Before the trial began the following morning, however,
Plaintiff's counsel moved for either a new jury or to remove the
replacement juror and go forward with a jury of seven, on the
ground that Plaintiff had already exercised his three peremptory
strikes before the replacement juror was moved into the jury box.
(N.T. 10/14/10, at 2.)  Plaintiff's counsel asserted that had he
known that the replacement juror might be seated, he would have
used a peremptory challenge on him, because during voir dire the
replacement juror had "stated that he had a box that fell and hit
him . . . and that he recovered"; Plaintiff's counsel was

concerned that the replacement juror would "prejudice [Plaintiff's] case because [the replacement juror] experienced the same exact symptoms and recovered." (Id. at 2-3.) In response to questioning from the Court, Plaintiff's counsel acknowledged that "[a]t no time did [he] challenge this juror for cause because he had a predisposed position that would be prejudicial to [Plaintiff]." (Id. at 4.) Plaintiff's counsel reiterated that he simply wanted to strike the replacement juror with a peremptory. (Id. at 5.) Defense counsel objected to Plaintiff's request, and the Court denied Plaintiff's motion. (Id. at 4-5.)

## B. Admission of deposition testimony

During the trial, the deposition testimony of Peter Salas was read into evidence. (N.T. 9/14/10, at 186.) Objections were raised to portions of the testimony, and the Court pointed out that the scheduling order issued more than a year earlier required that any objections to deposition testimony be filed with the Court prior to the commencement of trial. (Id. at 184 (citing Doc. No. 16, ¶ 10).) The Court ruled on the objections to the Salas deposition but warned that there would be no further rulings on objections not raised in accordance with the scheduling order. (Id. at 185.) The Court then asked if the

parties were ready to proceed, and counsel responded in the affirmative.  (Id.)  Subsequent depositions were read into evidence without any objections.  (See N.T. 9/16/10, at 81-82; N.T. 9/17/10, at 137-38; N.T. 9/20/10, at 2-3.)

## C.  The evidence

Plaintiff testified that, as he was unloading boxes from the tractor trailer in New York, a box weighing perhaps 20-30 pounds hit him in the head, causing him to strike his head on the bulkhead of the trailer.  (N.T. 9/14/10, at 63-66.)  Plaintiff guessed that he "was out 25 seconds" and testified that his "face was bleeding because of the bulkhead."  (Id. at 63.)  Plaintiff admitted that he did not seek medical attention in New York and instead drove back to Philadelphia.  (Id. at 65.)  Once in Philadelphia, Plaintiff sought medical attention with company doctors, complaining of nausea, dizziness, headache, and the inability to walk straight.  (Id. at 66.)  At trial Plaintiff testified about his symptoms; the medical professionals who subsequently treated him, including a neurologist who did so for almost four years after the incident; and the pain medication he was prescribed.  (Id. at 66-69.)

Plaintiff also presented the testimony of three experts who described Plaintiff's condition and attributed the injuries to

the December 7, 2006, incident.  Plaintiff's neurologist, Dr.
Michael Martin Cohen, testified by way of deposition that
Plaintiff suffered a permanent and chronic traumatic brain injury
as a result of the incident and that the symptoms of "dizziness,
memory loss, nausea, fatigue, cognitive balancing, inner ear
disease, [and] impairments" were a direct result of the incident.
(Cohen Dep. 59:7-62:21, Doc. No. 81-1 Ex. B.)  Plaintiff's ear,
nose, and throat specialist, Dr. Robert Sataloff, opined that
Plaintiff's dizziness, balance problems, hearing loss, and inner
ear disease were causally related to the traumatic injury on
December 7, 2006.  (Sataloff Dep. 42:6-44:6, Doc. No. 81-1 Ex.
C.)  Finally, Plaintiff's neuropsychologist, Dr. David Massari,
testified that Plaintiff was demonstrating "brain-related
cognitive deficits that [he] felt were directly related to the
brain injury" suffered as "a direct result of his accident . . .
on December 7, 2006."  (N.T. 9/15/10, at 83-84.)

Defendants also presented expert testimony, to rebut the
existence and severity of Plaintiff's alleged injuries and the
causative element.  Neuropsychologist Paul Moberg, Ph.D.,
testified that he did not "believe there's any evidence of closed
head injury from this incident" and also pointed to evidence
suggesting that Plaintiff was exaggerating his injuries.  (Moberg
Dep. 81:20-84:12, Doc. No. 83 Ex. C.)  Ear, nose, and throat

specialist Dr. Douglas Bigelow opined that Plaintiff's hearing

loss was not related to the head trauma associated with the

December 7, 2006, incident.  (Bigelow Dep. 20:15-22:24, Doc. No.

83 Ex. B.)  Neurologist Dr. Steven Arnold, whose testimony is at

the heart of the instant Motion, testified as follows:

[Direct examination]

A: [T]here was discrepancy between . . . what
[Plaintiff] said his daily functioning was like and how
he performed on the test.  So, . . . I think that this
would be consistent with his either voluntarily or
involuntarily exaggerating the poor performance.

. . .

Q: In what type of capacities would you opine that
[Plaintiff] could work and within a reasonable degree
of medical certainty?

A: Could be some light duty or desk-type work.

Q: When you say 'light duty,' what do you mean by that,
Doctor?

A: Well, he does have physical symptoms that have been
documented in terms of pain.  And, so, from a physical
standpoint, he may not be able to do the heavy lifting
or the crawling or things like that that he did as a-as
a truck driver. . . .

Q: And, Doctor, based upon . . . your review of the
records, your interview of Mr. Dougherty, your
examination of Mr. Dougherty, do you have an opinion
within a reasonable degree of medical certainty as to
what his diagnosis or what his condition is?

A: So, I believe that he did have a concussion.  I
think that he has some persistent symptoms particularly
related to his sense of dizziness and balance.  He has
neck pain and headache.  These would be consistent with

a persistent post-concussive type of syndrome.  I think
that given the . . . question of exaggeration of
cognitive symptoms, as well as these other symptoms, I
think it's impossible to determine whether he has bona
fide cognitive deficits that, you know, affect his
functioning.

. . .

[Cross examination]

. . .

Q: The diagnosis you made after examining Mr.
Dougherty, after reviewing all the medical records that
you reviewed in this matter, after taking a history
from him and . . . based on your experience as a
neurologist, you concluded that his diagnosis was a
mild traumatic brain injury, persistent post-concussive
syndrome and post-traumatic vestibular dysfunction; is
that correct?

A: What I said here, the whole sentence[,] was
symptomatically Mr. Dougherty's subjective complaints
are consistent with diagnosis of a history of mild
traumatic brain injury, persistent post-concussive
syndrome and post-traumatic vestibular dysfunction.
So, if we are to believe all of the symptoms at face
. . . , then these symptoms would be consistent with
these diagnoses.

Q: So, is it your opinion within a reasonable degree of
medical certainty, that based upon the symptoms that
Mr. Dougherty had[,] and based upon your examining him
and taking a history, that . . . the injuries of . . .
mild traumatic brain injury, post-concussive syndrome
and post-traumatic vestibular dysfunction is a direct
result of the . . . work accident he had on December
7th, 2006?

A: If it weren't for . . . the subjective nature of
many of his symptoms and this question of exaggeration
that we had, then, yes, that would be the case.
However, there is this question and so I can't be
certain.

. . .

Q: In this report you issued, you clearly stated that
barring any documentation of any preexisting or
subsequent alternative diagnostic considerations, that
given the temporal relationship of symptoms to the
injury of 12/7/06, these diagnosis [sic] are most
likely causally related to the injury of 12/7/06.  Did
you not state that in your report?  Without any
conditions on that statement, did you not say that?

A: That's what I wrote here.  You do need to appreciate
it within the context of this symptomatically, Mr.
Dougherty's subjective complaints.

Q: I understand that.  But you did based upon your
diagnosis made [sic], that these injuries, the
traumatic brain injury and the post-concussive injury,
the vestibular dysfunction[,] you believe are related
to the accident of December 7, 2006?

A: If there were none of these other things, yes.

(Arnold Dep. 41:13-44:9, 78:6-80:16, Doc. No. 83 Ex. A.)

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 59(a) authorizes a federal

district court to grant a new jury trial "for any reason for

which a new trial has heretofore been granted in an action at law

in federal court."  Fed. R. Civ. P. 59(a).  While "Rule 59(a)

does not set forth specific grounds on which a court may grant a

new trial," Russ-Tobias v. Pa. Bd. of Probation & Parole, No. 04-

0270, 2006 WL 516771, at *4 (E.D. Pa. Mar. 2, 2006), federal

courts have granted new trials where "(1) there is a significant

error of law, to the prejudice of the moving party; (2) the verdict is against the weight of the evidence; [or] (3) the size of the verdict is against the weight of the evidence."  Schlier v. Rice, No. 04-1863, 2008 WL 4922435, at *4 (M.D. Pa. Nov. 14, 2008).

"New trials granted because (1) a jury verdict is against the weight of the evidence may be sharply distinguished from (2) new trials ordered for other reasons: for example, evidence improperly admitted . . . ."  Lind v. Schenley Indus., 278 F.2d 79, 90 (3d Cir. 1960).  "[T]he district court's latitude on a new trial motion is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court, e.g., evidentiary rulings . . . ."  Klein v. Hollings, 992 F.2d 1285, 1289-90 (3d Cir. 1993).  "By contrast, when the verdict is alleged to be against the weight of the evidence, a district court's discretion is more limited."  Russ-Tobias, 2006 WL 516771, at *5 (citing Klein, 992 F.2d at 1290).  In the latter circumstance, the court may only award a new trial if the jury verdict shocks the conscience of the court.  See Olechna v. Dinoia, 45 App'x 98, 100 n.3 (3d Cir. 2002).[2]

---

[2] Courts in this Circuit have been inconsistent in stating the district court's standard of review of a jury verdict in a diversity case: some have held that the standard is taken from state law, while others have held that the standard is a matter of federal law though the adequacy of damages is a question of state law.  Compare Olechna v. Dinoia, 45 App'x 98, 100 n.3 (3d Cir. 2002) (calling the plaintiff's reliance on state law an "error" because

# III. DISCUSSION

## A. Weight of the evidence

Plaintiff's first argument for a new trial is that the jury's verdict—finding Defendants 50% negligent but awarding no damages—was against the weight of the evidence, such that it was

---

"the denial of a new trial under Federal Rule of Civil Procedure 59 is a matter of procedure governed by federal law and not state law"); Gebhardt v. Wilson Freight Forwarding Co., 348 F.2d 129, 133 (3d Cir. 1965) ("[T]hat the verdict was against the weight of the evidence and that the denial of its motion for a new trial based on this ground was error . . . must be decided under federal law."); and Kerzner v. Global Upholstery Co., No. 95-1209, 1997 U.S. Dist. LEXIS 18457, at *3 n.3 (E.D. Pa. Nov. 19, 1997) ("Defendants correctly note that federal law provides the standard for determining whether plaintiff is entitled to a new trial pursuant to Fed. R. Civ. P. 59, but incorrectly presume that the court should not consider Pennsylvania cases plaintiff cites regarding the adequacy of damages. Federal courts sitting in diversity look to state law to determine the adequacy of damages."); with Brennan v. Durgi, 296 Fed. App'x 244, 245 (3d Cir. 2008) (citing Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 419 (1996), for the proposition that the "review is governed by state law" and using the Pennsylvania standard); Hoggard v. Allstate Ins. Co., No. 05-1127, 2005 U.S. App. LEXIS 28424, at *2-3 (3d Cir. Dec. 21, 2005) (noting, seemingly with approval, that the plaintiff in the diversity case claimed that the damage award should be set aside under the Pennsylvania standard); and Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc., 181 F.3d 446, 463 (3d Cir. 1999) (citing state cases).

Nonetheless, "the standard for denying a new trial under Pennsylvania law is substantially similar to the standard under federal law. For example, to order a new trial under Pennsylvania law, the jury's verdict must 'shock[] one's sense of justice.' Under our [federal] case law, the jury's verdict must similarly 'shock[] our conscience.'" Olechna, 45 App'x at 100 n.3 (citations omitted). Compare, e.g., Neison v. Hines, 653 A.2d 634, 637 (Pa. 1995) ("[T]he verdict must not be a product of passion, prejudice, partiality, or corruption, or must bear some reasonable relation to the loss suffered by the plaintiff as demonstrated by uncontroverted evidence presented at trial."); with Kerzner, 1997 U.S. Dist. LEXIS 18457, at *4 ("A new trial on the ground of inadequate damages is appropriate only when a jury awards an amount 'substantially less than was unquestionably proven' with 'uncontradicted and undisputed evidence.'" (quoting Semper v. Santos, 845 F.2d 1233, 1236 (3d Cir. 1988))); and Tann v. Serv. Distribs., Inc., 56 F.R.D. 593, 598 (E.D. Pa. 1972) ("Damages assessed by a jury are not to be set aside unless . . . the jury's award indicates caprice or mistake or a clear abuse of its fact-finding discretion or the clear influence of partiality, corruption, passion, prejudice, or a misconception of the law." (citations omitted)), aff'd 481 F.2d 1399 (3d Cir. 1973). Thus, any distinction would not change the decision in this case.

a miscarriage of justice and shocks the conscience. Specifically, Plaintiff asserts that there was unequivocal medical expert testimony, from both Plaintiff's and Defendants' experts, establishing that Plaintiff suffered a "significant injury as a result of the December 7, 2006 incident," and that this injury requires compensation. (Pl.'s Mot. 1.) Defendants respond that they vigorously contested liability and damages and that Plaintiff has taken the testimony of defense expert Dr. Arnold out of context; Defendants argue that Dr. Arnold based his conclusion on Plaintiff's subjective complaints, which symptoms the jury did not need to credit as true. (Defs.' Resp. 6-7.)

"Credibility determinations are the unique province of a fact finder," Hoggard v. Allstate Ins. Co., 2005 U.S. App. LEXIS 28424, at *4 (3d Cir. Dec. 21, 2005) (quoting Scully v. U.S. WATS, 238 F.3d 497, 506 (3d Cir. 2001)), and "a jury may rationally reject even uncontradicted testimony which it finds unconvincing." Kerzner v. Global Upholstery Co., No. 95-1209, 1997 U.S. Dist. LEXIS 18457, at *4 (E.D. Pa. Nov. 19, 1997) (citing Semper v. Santos, 845 F.2d 1233, 1237 (3d Cir. 1988)). More specifically, "[a] determination regarding pain and suffering is 'peculiarly within the province of the jury.'" Kerzner, 1997 U.S. Dist. LEXIS 18457, at *4 (citing Semper, 845 F.2d at 1237). See, e.g., Semper, 845 F.2d at 1237 ("The jury

was in the best position to evaluate the credibility of Semper's testimony of his pain and suffering.  The jury was under no obligation to believe the testimony of Semper as to his chest pain, even if that testimony were undisputed." (citations omitted)).

In the determination of what injuries have been suffered and are compensable, there is a distinction between objective injury and subjective pain.  "[A] jury cannot freely ignore evidence of obvious injury."  Neison v. Hines, 653 A.2d 634, 639 (Pa. 1995); accord Hawley v. Donahoo, 611 A.2d 311, 313 (Pa. 1992) ("While the jurors are the sole judges of credibility, and appellant's inconsistent and perhaps exaggerated testimony could have been perceived as an indication of appellant's interests of opportunity beyond pain which could dilute their belief in the existence of the occasion itself, the jury is not free to ignore an obvious injury.").  Moreover,

> [T]here are injuries to which human experience teaches there is accompanying pain.  Those injuries are obvious in the most ordinary sense: the broken bone, the stretched muscle, twist of the skeletal system, injury to a nerve, organ or their function, and all the consequences of any injury traceable by medical science and common experience as sources of pain and suffering.

Boggavarapu v. Ponist, 542 A.2d 516, 518 (Pa. 1988) (citation omitted).  "If the pain, however, has no known medical source and is subjective to the person, the triers of fact must [first]

believe and accept that it could and in fact exists [in order to compensate it]." Id.; accord Hawley, 611 A.2d at 313. Thus, "if the defense expert concurs with the opinion of the plaintiff's expert only because of subjective complaints of the plaintiff, and the defense convinces the jury that the plaintiff was not truthful, the basis of [the] diagnoses might fail and a zero verdict would be appropriate." Van Kirk v. O'Toole, 857 A.2d 183, 186 (Pa. Super. Ct. 2004). "Likewise, the defense does not even have to call a defense expert if it can successfully challenge the credibility of the plaintiff and his doctors on cross-examination." Id.; see also id. at 185 ("Of course, the jury is free to disbelieve the plaintiff's subjective complaints, any diagnoses based on subjective complaints, and the plaintiff's doctor's opinions and conclusions.").

Finally, even if the jury concludes that there was indeed pain, there are circumstances in which damages are not warranted because the pain is not significant enough under Pennsylvania law. See Boggavarapu, 542 A.2d at 518 ("A jury is not compelled to believe that a dog bite or puncture caused by a needle causes compensable pain. They may believe that it is a transient rub of life and living, a momentary stab of fear and pain, or neither." (emphasis added)); Van Kirk, 857 A.2d at 185 ("Even though every muscle strain causes pain, it does not follow that all muscle

pain is compensable.  Common experience tells us that some strains are worse than others and a mild strain may cause less pain than a dog bite."); Kennedy v. Sell, 816 A.2d 1153, 1157 (Pa. Super. Ct. 2003) ("While it is true that a jury may not ignore an obvious injury, it is equally true that a 'transient rub of life' may produce an injury for which no compensable pain was associated." (citation omitted)); Majczyk v. Oesch, 789 A.2d 717, 726 (Pa. Super. Ct. 2001) ("[W]hile the jury may have concluded that appellant suffered some painful inconvenience for a few days or weeks after the accident, it may also have concluded that appellant's discomfort was the sort of transient rub of life for which compensation is not warranted.").[3]

The experts in this case disputed the existence, severity, and cause of Plaintiff's claimed injuries.  (See, e.g., Bigelow Dep. 20:7-22:24, Doc. No. 83 Ex. B.)  Of particular note, the defense presented evidence that Plaintiff was exaggerating his symptoms.  (See, e.g., Arnold Dep. 41:12-19, Doc. No. 83 Ex. A; Moberg Dep. 84:4-12, 91:24-92:2, Doc. No. 83 Ex. C.)  The jury was entitled to believe the defense experts and disbelieve Plaintiff and Plaintiff's experts in disputes over the alleged

---

[3] Of course, the jury must also find that any pain a plaintiff suffered was indeed caused by the defendant's actions.  See Boggavarapu v. Ponist, 542 A.2d 516, 519 (Pa. 1988) ("A tortfeasor is not obliged to answer for what he did not cause simply because he is a tortfeasor.").

injuries and pain.  While Plaintiff focuses on a portion of Dr.

Arnold's testimony that Plaintiff believes shows there are

uncontested injuries,[4] the jury was free to consider this

statement in the context of the doctor's entire testimony and

conclude that this opinion was premised on Plaintiff's subjective

complaints.  (See, e.g., Arnold Dep. 78:17-24, Doc. No. 83 Ex. A

("[S]ymptomatically Mr. Dougherty's subjective complaints are

consistent with diagnosis of a history of mild traumatic brain

injury, persistent post-concussive syndrome and post-traumatic

vestibular dysfunction.  So, if we are to believe all of the

symptoms at face . . . , then these symptoms would be consistent

with these diagnoses."); id. at 80:6-9 (clarifying that one

"need[s] to appreciate [his opinion] within the context of this

symptomatically, Mr. Dougherty's subjective complaints").)

     Even assuming that the jury found that Plaintiff indeed

suffered some pain or discomfort (e.g., a concussion, a headache)

as a result of the accident, the jury could conclude that the

pain or discomfort was not significant enough to warrant

compensation.  Compare, e.g., N.T. 9/14/10, at 65 (acknowledging

that Plaintiff did not seek immediate medical attention and

---

[4] Dr. Arnold testified, in part, "I believe that he did have a
concussion.  I think that he has some persistent symptoms particularly related
to his sense of dizziness and balance.  He has neck pain and headache.  These
would be consistent with a persistent post-concussive type of syndrome."
(Arnold Dep. 43:23-44:3, Doc. No. 80-1 Ex. D.)

instead drove from New York to Philadelphia after the accident),

with Van Kirk, 857 A.2d at 186 ("The following evidence suggests

that the pain was not severe enough to say that a zero verdict

was unreasonable: . . . Van Kirk declined medical treatment on

the scene."); Kennedy, 816 A.2d at 1155 (affirming the denial of

a new trial because the jury could find that the plaintiff only

suffered bruises in the car accident and that such bruises were

noncompensable); Majczyk, 789 A.2d at 726 (affirming the denial

of a new trial because the jury did not have to believe that the

plaintiff's discomfort was compensable).  Thus, the Court cannot

say that the decision not to award damages was against the weight

of the evidence, and a new trial is not warranted on this

ground.[5]

---

[5] To the extent that Plaintiff's argument is based on a purported
inconsistency in the verdict's finding Defendants 50% liable but refusing to
award damages, Plaintiff's motion for a new trial might also be denied because
of Plaintiff's failure to raise the objection before the jury was discharged.
See Simmons v. City of Phila., 947 F.2d 1042, 1056-57 (3d Cir. 1991) ("In this
circuit, it probably is necessary, as it is in the majority of the circuits,
to raise prior to the jury's dismissal an objection based on the inconsistency
of the answers to interrogatories supporting a general verdict rendered under
[Federal] Rule [of Civil Procedure] 49(b).").  Because the jury's responses to
the verdict form's interrogatories were not inconsistent but rather were
permissible conclusions based on the evidence presented, the Court need not
address the possibility of waiver.  See Marra v. Phila. Hous. Auth., 497 F.3d
286, 312 n.21 (3d Cir. 2007) ("In the end, however, we need not resolve the
waiver issue under Rule 49 . . . because the verdicts here are not
inconsistent.").

## B. Jury selection

Plaintiff's next argument for a new trial is that the denial of Plaintiff's motion for a new jury panel or for a jury of seven (i.e., to strike the final juror composing the jury of eight) was an abuse of discretion and violation of the "right to a fair trial guaranteed by the Seventh Amendment."  (Pl.'s Mot. 1.)

Significantly, Plaintiff never moved to strike the replacement juror for cause,[6] and there is nothing in the record to suggest that he should have been removed for cause.[7]  Rather, Plaintiff would have liked to exercise his peremptory challenges differently and, essentially, is arguing that he should have been

---

[6] "The district court cannot have abused its discretion in failing to be persuaded by an argument to remove a juror, if the challenging party never made that argument." Marks v. Shell Oil Co., 895 F.2d 1128, 1129 (6th Cir. 1990).

[7] "A juror is impartial if he or she can lay aside any previously formed impression or opinion as to the merits of the case and can render a verdict based on the evidence presented in court." Kirk v. Raymark Indus., 61 F.3d 147, 153 (3d Cir. 1995) (internal quotation marks omitted); see also Marks, 895 F.2d at 1129 ("At voir dire, Marks, as challenging party, bore the burden of persuading the court that the juror was partial and subject to excusal for cause.").  Despite having had the opportunity to question the replacement juror, Plaintiff never showed that the juror could not render a verdict based on the evidence simply because he had previously been struck in the head and recovered.  Even the case cited by Plaintiff in support of his position in fact supports the decision to keep the juror.  See Smith v. Vicorp, Inc., 107 F.3d 816, 819 (10th Cir. 1997) (holding that "Plaintiff's speculation that the jury's refusal to award damages after finding a reckless and wanton invasion of privacy was the result of tort reform bias falls too wide of the mark" when counsel had "the opportunity to ferret out possible tort reform bias" during voir dire, even though the court had "restricted the amount and scope of the questions asked").  See generally Ross v. Oklahoma, 487 U.S. 81, 86 (1988) (concluding that a criminal defendant failed to establish that the jury was not impartial when, among other things, none of the jurors who ultimately served was challenged for cause).

given another peremptory challenge to strike the replacement

juror from the panel of eight (or that all eight jurors should

have been struck and an entirely new panel chosen).

"[T]he right to peremptory challenges is a statutory, rather

than a constitutional privilege," however, Kirk v. Raymark

Indus., 61 F.3d 147, 160 (3d Cir. 1995) (citing United States v.

Ruuska, 883 F.2d 262, 268 (3d Cir. 1989)), and is conferred in

civil cases by 28 U.S.C. § 1870:

> In civil cases, each party shall be entitled to
> three peremptory challenges.  Several defendants or
> several plaintiffs may be considered as a single party
> for the purposes of making challenges, or the court may
> allow additional peremptory challenges and permit them
> to be exercised separately or jointly.
> All challenges for cause or favor . . . shall be
> determined by the court.

28 U.S.C. § 1870 (2006); see also Ross v. Oklahoma, 487 U.S. 81,

88 (1988) ("We have long recognized that peremptory challenges

are not of constitutional dimension."); Kirk, 61 F.3d at 157

("Although Owens-Corning never specifically articulated that the

impairment of the peremptory strike was a statutory violation, we

are of the opinion that raising the question of the appropriate

remedy for the impairment of peremptory challenges fairly places

before us the question of whether a statutory right to peremptory

challenges has been violated.").

Although the Court has not found much case law directly on point,[8] the Court's own research shows that Plaintiff's argument lacks merit.  As an initial matter, in single-party cases, § 1870 is silent with regard to the mode of procedure.  While "district courts have been awarded ample discretion in determining how best to conduct the voir dire," <u>Kirk</u>, 61 F.3d at 153 (quoting <u>Waldorf v. Shuta</u>, 3 F.3d 705, 710 (3d Cir. 1993)), the Third Circuit has held that "[t]he statute, in our view, provides that in single party civil litigation the court is not authorized to allow more than three peremptory challenges per side."  <u>Blount v. Jugoslavenska Linijska Plovidba</u>, 567 F.2d 583, 585 (3d Cir. 1977).  In this case, there was only one plaintiff, and the defendants were essentially treated as a single party, such that the refusal to in effect grant more than three peremptories per side was appropriate if not required.

The Second Circuit's well-reasoned opinion in <u>United States v. Blouin</u>, 666 F.2d 796 (2d Cir. 1981), is also instructive.  In <u>Blouin</u>, a criminal defendant requested that a replacement juror be drawn before he exercised his final peremptory challenge against one of the eleven persons remaining in the twelve-person

---

[8] In support of his argument, Plaintiff only cites to two cases, both of which simply confirm the general discretion of a trial judge in voir dire. <u>See</u> <u>Smith</u>, 107 F.3d at 817 ("The scope and extent of voir dire is left to the sound discretion of the district court."); <u>Bentivoglio v. Ralston</u>, 288 A.2d 745 (Pa. 1972) (addressing Pennsylvania state law for voir dire of jurors).

jury box.  Id. at 797.  The request was denied, and Blouin

exercised his last challenge, after which two members from the

array were chosen to replace his last two challenges and complete

the jury of twelve.  Id.  Blouin contended that he was "unduly

restricted in his exercise of his [last] peremptory challenge by

not knowing, before he used that challenge, the identity of the

member of the array who would replace his [previous] challenge."

Id.  The Second Circuit held that "the jury selection procedures

did not deny Blouin any protected right" despite his being

"obliged to exercise his last challenge before knowing the

identity of two members of the twelve-person jury."  Id. at 796,

799.

    The court explained the two most common voir dire systems,

the jury-box system and the struck-juror system.[9]  It noted that

---

[9] In the jury-box system,

   [M]embers of the array are selected by lot to enter the jury box;
   counsel for each side then exercise challenges for cause and their
   allotted number of peremptory challenges, in some prescribed
   pattern of alternation, against those seated in the jury box and
   against those drawn to replace any of the first [number] who have
   been challenged.  When both sides have either used or waived their
   allotted challenges, the [] members of the venire then in the jury
   box become the petit jury.

United States v. Blouin, 666 F.2d 796, 796 (2d Cir. 1981).  In the struck-
juror system,

   [A]n initial panel is drawn by lot from those members of the array
   who have not been challenged and excused for cause; the size of
   this initial panel equals the total of the number of petit jurors
   who will hear the case . . . , plus the combined number of
   peremptories allowed to both sides . . . . Counsel for each side
   then exercise their peremptory challenges, usually on an

the jury-box system "does not afford the opportunity, or the danger, of full comparative choice, for the parties do not know ahead of time who the replacement for a challenged juror will be" and thus "has the inherent disadvantage that each side must accept at least one juror whom he has not had an opportunity to challenge." Id. at 798. With the struck-juror system, "the parties make the most effective use of their challenges, in the sense that through their choices they are able to determine from the initial panel not only who will not serve but also who will serve as the petit jury." Id. The court disagreed that "the right to challenge peremptorily should necessarily imply a right to shape a jury's profile to such an extent" as the struck-juror system provides. Id.

In this case, Plaintiff did not realize that the replacement juror would actually sit on the jury when he exercised his peremptory challenges. But "in every case in which an alternating system of rounds is used, whoever has the last challenge will exercise it without knowing the identity of one member of the jury-the person who replaces the juror removed by that last challenge." Id. at 799. Plaintiff is not entitled to

_____

alternating basis, against the initial panel until they exhaust their allotted number and are left with a petit jury . . . .

Id. at 796-97.

a "perfect" jury.  See id. at 798-99 ("Blouin cannot succeed in
his claim simply by showing that he could, under some procedure,
have made more effective use of his peremptories.  If that were
the test, the 'struck jury' system would be required, for it
affords a more 'effective' opportunity for the use of
peremptories than the 'jury box system.'"); see also Govt' of
Virgin Islands v. Rosado, 699 F.2d 121, 123 n.1, 128 (3d Cir.
1983) (rejecting summarily, as having "no merit," the contention
that refusing to give an additional peremptory to a criminal
defendant after excusing a previously seated juror was an abuse
of discretion); Copeland v. Gulf Oil Corp., 672 F.2d 867, 869-70
(11th Cir. 1982) (finding no denial of due process when the court
did not strike a replacement juror for cause, after the plaintiff
had used his peremptories, as there was no showing of bias when
the juror had simply admitted during voir dire that he had
represented "the employer's side" in injury disputes).

Accordingly, the fact that Plaintiff was not able to
peremptorily strike the last replacement juror–a concern that
only arose because of counsel's failure to question the
prospective jurors about conflicts with the trial dates–does not
mean any right was violated.  Plaintiff is not entitled to a new
trial on this ground.

## C.  Objections to deposition testimony

Finally, Plaintiff asserts that the Court's refusal to rule on objections to portions of depositions admitted at trial, which objections were not presented pretrial in accordance with the Court's scheduling order, was an abuse of discretion and prejudicial to Plaintiff.  Notably, Plaintiff does not cite to any law in support of his position.

Scheduling orders requiring that any objections to depositions be raised pretrial are commonplace, and it is well-established that a court may admit evidence at trial when objections are not made in accordance with such an order.  See Fed. R. Civ. P. 16(f) (authorizing the court to "issue any just orders . . . if a party or its attorney . . . (C) fails to obey a scheduling or other pretrial order"); Clarksville-Montgomery County Sch. Sys. v. U.S. Gypsum Co., 925 F.2d 993, 998 (6th Cir. 1991) ("Refusal to consider an objection made in contravention of a district court's scheduling order is merely one suitable sanction."); cf. Karsten v. Kaiser Found. Health Plan, 36 F.3d 8, 10-12 (4th Cir. 1994) (per curiam) (affirming the admission of exhibits that were not objected to in accordance with the timing requirements of the district court's scheduling order).  See generally Fed. R. Civ. P. 16(b)(4) (providing that a scheduling

order "may be modified only for good cause and with the judge's consent"); Local R. Civ. P. 16.1.

Moreover, it is a "well recognized rule of evidence" that "evidence to which a timely objection is not made becomes competent." Belmont Indus. v. Bethlehem Steel Corp., 62 F.R.D. 697, 701 (E.D. Pa. 1974); cf. Kirk, 61 F.3d at 156 ("[I]t is well established that failure to raise an issue in the District Court constitutes waiver of the argument." (internal quotation marks omitted)).

While Plaintiff's post-trial motion asserts that certain depositions had not concluded prior to trial and that objections could thus not be raised pretrial, (Pl.'s Mot. 2), Plaintiff does not point to anything in the record showing that Plaintiff informed the Court that the reason the objections to depositions were not being made in accordance with the scheduling order was because the depositions had not concluded prior to trial. (See N.T. 9/14/10, at 184-85; N.T. 9/16/10, at 81-82; N.T. 9/17/10, at 127-38; N.T. 9/20/10, at 2-3.) Plaintiff therefore cannot complain now. Accord Belmont, 62 F.R.D. at 701-03 (denying the motion for a new trial premised on the court's refusal to strike testimony, as counsel had not made the objection at the time the testimony was given but rather had objected to it in a pretrial memorandum and moved to strike it after the close of evidence).

In any event, Plaintiff does not identify specifically which
portions of the depositions he would have objected to at trial
and how those purportedly objectionable portions were
prejudicial.  While Plaintiff's brief states that "[s]pecific
examples are contained within Dr. Moberg's testimony to the jury
that was outside the four corners of his report," (Pl.'s Br.
unnumbered p. 14), Plaintiff admits that Dr. Moberg's deposition
was held on September 10, 2010, <u>before</u> trial.  (<u>Id.</u>)  Plaintiff's
motion identifies nothing in the depositions of Dr. Jason Walker
or Dr. Douglas Bigelow–the witnesses whom Plaintiff asserts were
deposed during trial–that was improperly admitted.  (<u>See</u> <u>id.</u>)
<u>See generally</u> <u>Belmont</u>, 62 F.R.D. at 703 ("It is the contention of
Belmont that its objections set forth in the Pretrial Order to
some of the exhibits which were used by Bethlehem in the course
of its cross-examination of Belmont's witnesses constituted a
timely objection to the use of such documents without bringing
the objection to the Court's attention during trial.  Such a
contention is clearly without merit.")  Thus, a new trial is not
warranted on this ground.

## IV.  CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's
Motion for a New Trial.